IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | Case No. 1:24-CR-199 |
| v. ) | |
| ) | Honorable Michael S. Nachmanoff |
| GOKHAN GUN, ) | |
| ) | Sentencing:  June 17, 2025 |
| Defendant. ) | |

## **UNITED STATES' POSITION ON SENTENCING**

The United States trusted defendant Gokhan Gun to protect TOP SECRET information. Gun brazenly betrayed that trust when he took classified materials home and attempted to take a TOP SECRET document to Mexico. With security trainings still fresh in his mind, the defendant chose to willfully violate the law and his sworn oath. He was caught, subsequently accepted responsibility, and now appears for sentencing. The United States of America, through undersigned counsel and in accord with 18 U.S.C. § 3553(a) and the United States' Sentencing Commission Guidelines Manual ("Guidelines"), hereby provides its sentencing position.

The United States requests this Court adopt the findings of the Pre-Sentence Investigation Report ("PSR"). After a review of the 18 U.S.C. § 3553(a) factors and with no clearly analogous Guidelines, the United States requests a sentence of 36 months followed by a three-year term of supervised release. Considering the defendant's significant assets, PSR at ¶¶ 65-67, the United States also requests a $145,000 fine—the equivalent of Gun's Department of Defense ("DoD") yearly salary when he betrayed the American people's trust.

**I.    Factual Background**

The defendant is a 52-year-old resident of Fairfax County, Virginia. Born in Turkey, he became a United States citizen in 2021. At his arrest, the defendant was a civilian electrical

1

engineer for DoD specializing in wireless communications. The defendant was assigned to the Joint Warfare Analysis Center ("JWAC") which supports the U.S. Strategic Command's Director of Global Operations. The defendant worked at JWAC from August 2023 until August 2024, earning a $145,000 yearly salary.

At JWAC, the defendant was granted a TOP SECRET security clearance with access to Sensitive Compartmented Information (SCI) and received training about how to properly handle classified information. This training included, but was not limited to, the definitions of classified information, the levels of classification including TOP SECRET and SCI, and training on the proper handling, marking, transportation and storage of classified materials.

The defendant was also instructed on his duty to protect classified materials from unauthorized disclosure. On September 25, 2023, the defendant signed a Classified Information Nondisclosure Agreement. On December 12, 2023, the defendant signed a Sensitive Compartmented Information Nondisclosure Agreement. Both agreements provide, in part, that unauthorized disclosure or mishandling of classified information may violate United States' law, including 18 U.S.C. § 1924.

Beginning on or about May 10, 2024, and continuing through on or about August 9, 2024, the defendant printed documents with visible classification markings at his workplace (often after most of his coworkers had left for the day), willfully carried the documents out of JWAC, often in plastic bags, and knowingly kept classified documents at his residence. The defendant knew his actions were contrary to his training and in violation of 18 U.S.C. § 1924.

On the morning of August 9, 2024, the defendant was scheduled to fly to Puerto Vallarta, Mexico. As he was leaving for the airport, FBI agents executed a search warrant at the defendant's residence. During the search, agents discovered a fanny pack containing the defendant's current

United States passport as well as his expired Turkish passport.

Most concerning, in a backpack sitting outside the defendant's locked entryway door and apparently packed for his trip, agents found a document with visible TOP SECRET classification markings and a copy of the defendant's Intelligence Community credentials.[1] Those credentials showed the defendant's clearances and proved which sensitive compartment and subcompartments the defendant could access. In other words, the defendant was heading to Mexico with one TOP SECRET document and proof that he had extensive access to other highly sensitive information.

FBI agents arrested the defendant and advised him of his *Miranda* rights. The defendant consented to an interview and proceeded to provide demonstrably false information. First, he falsely denied ever taking any classified documents from his workplace—despite having marked classified documents in his backpack and in his home. Then, he falsely stated that if there were any documents with classification markings in his residences, the classifications might be "expired." None of the classified documents seized from the defendant were "expired."

Original Classification Authorities subsequently confirmed the classifications of multiple documents marked classified that were recovered from the defendant's person and residence. The documents were classified at the time the defendant printed and removed them from JWAC and they remain classified. These documents bore visible classification markings. The document recovered from the defendant's backpack was determined to be properly classified as TOP

---

[1] In bold red letters at the top of the document was written, "This information is for personal use only. Do NOT hold or disseminate. Privacy Sensitive – any misuse or unauthorized access may result in disciplinary action."

SECRET/SCI with subcompartments.[2] The defendant's backpack also contained a notebook with handwritten notes and drawings. Intelligence agencies later determined that at least one of the handwritten pages mirrored a report classified TOP SECRET/SCI with subcompartments. Agents did not find the corresponding report in the defendant's residence. An Original Classification Authority confirmed that the defendant's copied information was classified TOP SECRET/SCI with subcompartments.

Four other documents recovered from the search of the defendant's residence also bore visible classification markings. One was determined to be properly classified as TOP SECRET/SCI with subcompartments.[3] The other three all had visible classification markings with subcompartments, and they were all determined to be properly classified.[4]

## II. Guidelines Calculation

Although the Guidelines are advisory, sentencing courts "must consult those Guidelines and take them into account when sentencing." *United States v. Booker*, 543 U.S. 220, 261 (2005). Thus, at sentencing a court "must first calculate the Guidelines range." *Nelson v. United States*, 555 U.S. 350, 351 (2009). Here, the United States' Probation Office determined there was "no clear analogous guideline pertaining to the offense of conviction." PSR at ¶ 39.

## III. Section 3553(a) Factors

After calculating the applicable Guidelines range, a sentencing court must then consider that Guidelines range as well as the sentencing factors set forth in § 3553(a) to determine a sentence

---

[2] The document from the backpack is identified as Document Number 1 in the statement of facts filed with the defendant's plea agreement.

[3] This was the document identified as Document 2 in the statement of facts.

[4] These three documents were identified as Documents 3, 4, and 5 in the statement of facts.

that is appropriate and reasonable for the individual defendant. *Nelson*, 555 U.S. at 351; *see also United States v. Hughes*, 401 F.3d 540, 546 (4th Cir. 2005). In this case, since there are no Guidelines that pertain to this offense, the § 3553(a) factors control.

With respect to 18 U.S.C. § 3553(a)'s enumerated factors, of particular relevance here are the "nature and circumstances of the offense," the need for the sentence "to reflect the seriousness of the offense," "the history and characteristics of the defendant," the need "to promote respect for the law," and the need for the sentence "to afford adequate deterrence to criminal conduct." § 3553(a)(1), (a)(2)(A), (a)(2)(B), (a)(7). As explained below, based on those factors, a sentence within the Guidelines range of 36 months and a fine of $145,000 is warranted, appropriate, and reasonable in this case.

> **A.    *A sentence of 36 months is necessary based on the nature, circumstances, and seriousness of the offense.***

By definition, the defendant's removal and mishandling of TOP SECRET information from JWAC risked *exceptionally grave damage* to the national security of the United States. The United States anticipates that one of the victim agencies will provide a classified impact statement prior to sentencing. Once received, the United States will promptly share the statement with the Court and defense counsel. That impact statement is expected to provide additional context to the nature, circumstances, and seriousness of the defendant's offense.

> **B.    *A sentence of 36 months is necessary in light of the defendant's personal history and characteristics.***

The defendant is 51 years old, well educated, and has enjoyed numerous advantages in life. He is a highly trained electrical engineer with a Master's degree from the George Washington University School of Engineering Science and Applied Science. At the time of his arrest, he was working towards obtaining his PhD in quantum mechanics from the School of Engineering and

Computer Science at Southern Methodist University. He is intelligent and trained in the importance of details, accuracy, and following established procedures.

Prior to joining JWAC, the defendant held a variety of positions connected to the United States' government, including positions as a federal contractor and with the United States House of Representatives. Given his skills and abilities, he was hired to work at JWAC where he was entrusted with a TOP SECRET/SCI security clearance. As part of his job, he had regular access to classified information and classified network computers.

The defendant cannot point to a lack of education or understanding to justify his crime. Nor can he claim any economic privation or desperation as a motivation. He lived a comfortable lifestyle, owned multiple homes, and had hundreds of thousands of dollars in his accounts at the time of his arrest. The defendant was uniquely well suited to understand the importance of protecting classified information. But rather than using his background and training with the federal government to protect our nation's secrets, the defendant flagrantly violated the law and not only took TOP SECRET information out of his workplace, but attempted to take it out of the country.

Given the multiple classified documents found in the defendant's home, and the defendant's attempts to minimize and justify his actions, it is reasonable to assume that if law enforcement had not intervened, the defendant would have continued to remove highly classified materials from JWAC to take home and abroad. His actions are serious and brazen, particularly for someone with so much experience working for the United States government.

In sum, the defendant's conduct can only be attributed to hubris. As the PSR reflects, no childhood, family, educational, financial, or other traumatic mitigating factors explain his disregard for the position of trust he held. A sentence of 36 months—and a financial penalty for

his abuse of trust during the year he worked at JWAC—is necessary to account properly for the defendant's personal history and characteristics, as well as to deter him from future crimes.

      **C.**     *A sentence of 36 months and a $145,000 fine is necessary to promote respect for the law and to protect the public through general and specific deterrence.*

The defendant's crime required conscious, repeated decision making. Defendants like Gun make deliberate, repeated choices to act illegally not because of mistakes or split-second bad judgments in the heat of the moment, but because after conscious reflection, they conclude that the expected benefits of violating the law outweigh the likelihood of getting caught and the duration of any potential imprisonment if they are convicted. A meaningful sentence of incarceration is required to shift others' calculus and deter criminal activity.

General deterrence matters. Especially considering the sheer number of people across the world with access to our Nation's most sensitive information, the mishandling and unauthorized disclosure of which could result in devasting consequences. General deterrence is important in any case, but particularly in offenses like these, in which clearance holders are trained and sworn to protect classified information, but they decide to ignore their obligations and jeopardize highly classified information. *See, e.g.*, *United States v. Martin*, 455 F.3d 1227, 1240 (11th Cir. 2006) (finding that crimes that are "rational, cool, and calculated" rather than "crimes of passion or opportunity" are "prime candidates for general deterrence") (citation omitted). There are numerous clearance holders throughout this country. They all share the same obligation that the defendant had to protect classified information. For any clearance holder considering violating that obligation, a meaningful sentence in this case helps to advance the goal of general deterrence.

General deterrence is also a significant factor for crimes that are difficult to detect, because the very factors that enable the criminal conduct to occur also frequently aid in its concealment. *See, e.g.*, *United States v. Shortt*, 485 F.3d 243, 251-251 (4th Cir. 2007) ("As a practical matter,

7

extensive efforts to conceal demand greater punishment, because they make it less likely that authorities will detect the scheme."). When these kinds of schemes occur, absent some intervening cause or action taken by a third party to uncover and disclose the activity, crimes like the defendant's often go undetected. Here, the defendant was surreptitiously and unlawfully removing classified materials from his place of work over a period of months, shortly after being hired. Fortunately, his unlawful activities were detected in August 2024, and the FBI managed to recover the materials that he had improperly removed from his workplace. Yet even at the time of his arrest, after those documents had been discovered, he falsely proclaimed his innocence to the FBI and argued that perhaps they were "expired."

Because of the defendant's conduct after he was caught, specific deterrence is equally important. Regardless of what sentence the defendant receives, he will soon be out of prison, and he will one day no longer be under the supervision of Probation. Yet he will retain in his memory a great deal of classified information that he knows from his time at JWAC. It is imperative that he not reveal that information to anyone for the rest of his life. A term of imprisonment and a strong monetary penalty will warn him to never again betray the trust placed in him.

In sum, a sentence of 36 months and a $145,000 monetary penalty equivalent to the yearly salary he received as a JWAC employee is reasonable and necessary to warn the defendant from further offenses and to signal to other would-be Gokhan Guns that jeopardizing our nation's secrets will be met with a significant sentence.

D.   *A sentence of 36 months is necessary after reviewing other similarly situated defendants.*

A sentence of 36 months in prison is also appropriate given that it is consistent with sentences in other cases involving similar conduct. For example, in *United States v. Ashby*, 4-CR-00055-JRH-BKE (S.D. Ga. 2024) the defendant was an NSA employee who copied and sanitized

8

three finished intelligence assessments up to the TOP SECRET, SCI, SI-G levels, and then passed them off as her own work product in a graduate degree program. She was charged in a criminal information with a single count of 18 USC § 1924. She later participated in a reverse proffer. She was sentenced to 36 months in prison pursuant to a joint recommendation in her plea agreement.

### IV.     Imposition of a Fine.

In addition to a sentence of 36 months of imprisonment, the Court should also impose a $145,000 fine in this case. This is equal to the defendant's yearly salary while he worked at JWAC. Despite the trust that was placed in him by his DoD employer, and despite the training that he received on how to properly handle classified information, the defendant chose to betray that trust, all while being compensated by his employer. Since there are no applicable sentencing guidelines in this case, the Fine Table set forth in USSG § 5E1.2 does not apply.  However, the considerations listed in § 5E1.2(d) should apply.

Section (d)(1) indicates that the Court should consider "the need for the combined sentence to reflect the seriousness of the offense (including the loss or the harm to the victim and the gain to the defendant), to promote respect for the law, to provide just punishment and to afford adequate deterrence." Here, the defendant profited from his position of trust at JWAC with his $145,000 salary. Notably, the defendant was not a long-term employee who had provided years of valuable efforts to the government before making a mistake. He was a new employee who gained a significant position, was paid well, and almost immediately violated his employer's and the American public's trust. Not only did JWAC lose that salary to an employee who betrayed the organization, but JWAC also lost the considerable money spent to train and obtain clearances for the defendant. In fact, after the defendant's arrest, JWAC calculated that it cost over $40,000 to obtain all of the requisite clearances for him.

Section (d)(2) indicates that the Court should consider "any evidence presented as to the defendant's ability to pay the fine (including the ability to pay over a period of time) in light of his earning capacity and financial resources." The PSR calculates the defendant's net worth is $2,352,750. PSR at ¶ 65. This defendant can pay a fine of $145,000.

Section (d)(3) indicates that the Court should consider "the burden that the fine places on the defendant and his dependents relative to alternative punishments." The defendant does not have any dependents. While the defendant would undoubtedly prefer not to pay a fine, given his financial resources, paying $145,000 would not be unduly burdensome. Returning the salary he collected during the year he worked at JWAC and abused his clearances is fair and reasonable.

## V.     Conclusion

For the reasons stated, the United States requests that this Court impose a term of incarceration of 36 months, followed by a period of 3 years of supervised release, a fine of $145,000, and a $100 special assessment.

Respectfully submitted,

Erik S. Siebert
United States Attorney

By:     /s/
John T. Gibbs
Assistant United States Attorney
United States Attorney's Office
Eastern District of Virginia
2100 Jamieson Avenue
Alexandria, Virginia 22314
Tel: (703) 299-3700
Fax: (703) 299-3981
Email: john.gibbs@usdoj.gov

**CERTIFICATE OF SERVICE**

      I hereby certify that on June 9, 2025, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing ("NEF") to all counsel of record.

                                                  _____/s/_____
                                               John T. Gibbs
                                             Assistant United States Attorney